UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 24-cv-10109-RGS

DANIEL McINTOSH

v.

MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

May 27, 2024

STEARNS, D.J.

Plaintiff Daniel McIntosh brought this Complaint against the Massachusetts Bay Transportation Authority (MBTA), and ten of its employees on January 12, 2024. McIntosh complains of employment discrimination/hostile work environment and retaliation under 42 U.S.C. § 2000e (Title VII) and Mass. Gen. Laws ch. 151B, and common-law defamation. All defendants quickly moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(5), and 12(b)(6), relying on McIntosh's alleged failure to comply with Federal pleading Rule 8; failure to plead facts to support the elements of his Title VII and Massachusetts

discrimination claims; and his failure to address the employee-defendants'
defenses of no individual liability and limitations bars.

As permitted under Rule 15 (a)(1)(B) (allowing a timely-filed
amendment of Complaint once as a matter of course), in response to
defendants' motions to dismiss, on April 1, 2024, McIntosh, filed an
Amended Complaint (FAC).    However, without seeking leave of court, on
April 16, 2024, McIntosh *sua sponte* filed a Second Amended Complaint
(SAC) withdrawing his nonviable claims against the MBTA employee
defendants.    *See* Dkt #14.    Absent (understandably) any objection by
defendants), the court accepted the SAC.    *See* Dkt #15.

In the SAC, McIntosh limns ten events occurring between October 7,
2019, and December 3, 2019, during his introductory training as an MBTA
employee that he asserts raise "an inference of Discrimination and
Retaliation, and a hostile work environment."    Pl.'s Opp'n (Dkt # 19) ¶ 1.
McIntosh describes what he    considered odd behavior by various MBTA
personnel and his fellow inductees, focusing on their comments and facial
expressions as "direct evidence" of retaliation or harassment.[1]    *See* SAC ¶¶ 2-

---

[1] For example, McIntosh alleges the following events that allegedly took
place during his first month of training.

"**October 7, 2019** new hires had to meet at MBTA headquarters for a new employee seminar, what I thought was strange, and nasty attitudes [McIntosh] received, demonstrating a discriminatory intent."  SAC ¶ 2.

"**October 8, 9, 2019**, training day, a man comes in class (Instructor Richard Austin), yelling about being fired and how he brings firearms to work.  Made [McIntosh] feel a little uncomfortable, I asked, 'don't you think that is reckless'. This demonstrates animus, retaliatory intent that would support an inference." *Id.* ¶ 3.

"**October 24, 2019** Instructor Ahlam Samrin asked all the trainees for their driver's license so that she can take a photo copy.  [McIntosh] said shouldn't you request that information from HR in writing.  Ahlam was triggered you could see it in her face.  Constitutes retaliatory intent, harassment." *Id.* ¶ 4.

"**October 29, 2019** while standing outside of the Cleveland Circle lobby with a fellow trainee George.  Darryl Foye approached [McIntosh] and said, 'we hire you to fire you.' Demonstrates a discriminatory and retaliatory intent." *Id.* ¶ 5.

"**October 31, 2019** Lechmere yard, Cambridge, Instructor Ahlam Samrin, Dwayne Harris had a whiskey bottle, Dwayne pulled it from his pocket and put it on the ground, Ahlam picked it up and tried to make it appear that it belonged to [McIntosh.  McIntosh] was interrogated by a trainee about cracking safes.  Demonstrates harassment and retaliatory intent. *Id.* ¶ 6.

Ahlam said someone in the office wanted to speak with me, Superintendent Cathy Murphy.  She asked did I have any concerns, [McIntosh] replied, 'the first few days of class, Instructor Richard auction yelling about his firearm", [but] before [McIntosh] could finish [his] sentence she had a request of her own, in a nasty and angry tone 'don't say anything bad about Ahlam.' The bad attitude is direct evidence of retaliatory intent." *Id.* ¶ 7."

"**November 6 2019** Ahlam told [McIntosh] that he had to retake an exam, believing her in good faith [McIntosh] said okay. [McIntosh took the exam, finished it, then Ahlam said to McIntosh] 'Daniel I gave you the wrong

11.  On December 6, 2019, McIntosh was placed on a 70-day suspension, and received a termination letter on February 27, 2020.  SAC ¶¶ 12-13.

McIntosh filed claims of discrimination on March 12, 2020, with the Massachusetts Commission Against Discrimination (MCAD), and the Equal Employment Opportunity Commission (EEOC).  *Id.* ¶ 15. In his SAC's prayer for relief, McIntosh requests reinstatement to his position with the MBTA, back pay and front pay with full benefits as a fulltime employee, plus attorneys' fees, punitive and compensatory damages, compensation for emotional pain and suffering, and a written apology from the MBTA.[2]

The MBTA has renewed its motion to dismiss arguing that in the SAC McIntosh: (1) fails to plead viable discrimination or retaliation claims; (2) that his claim under Chapter 151B is governed by an expired three-year

---

exam, you have to take the exam again.  [McIntosh asked] 'are the exams rigged', [Ahlam] answered by saying in a very nasty and angry tone 'Daniel are you refusing to take the exam.' [McIntosh] took the exam again.  [Ahlam] was triggered by [McIntosh] questioning her practices.  Demonstrates harassment and retaliation."  *Id.* ¶ 8.

There are three remaining factual allegations in the SAC – only one of which seems of possible significance.  McIntosh avers that "on December 3, 2019, Instructor Richard Austin approached [him] in a very aggressive manner . . . telling [McIntosh] you're done," and placed him on administrative leave.  SAC ¶ 11.

[2] The court notes that McIntosh's position at the MBTA at the time he was terminated was that of a part-time employee.  SAC ¶ 1.

statute of limitations; and (3) that it was never properly served under Federal Rule 4.  MBTA Mem. at 2 (Dkt # 18).  The MBTA's motion to dismiss the SAC (Dkt # 17) will be <u>ALLOWED</u> for its failure to comply with the pleading standards and procedural rules described below.

## DISCUSSION

"To survive a motion to dismiss, plaintiff's complaint 'must contain sufficient factual matter . . . to state a claim that is plausible on its face." *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (second alteration in original).  Under this familiar "make-or-break standard," a claim has facial plausibility "when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sepúlveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 29 (1st Cir. 2010).  Although the standard is deferential to plaintiffs, "[i]f the facts articulated in the complaint are 'too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture,' the complaint is vulnerable to a motion to dismiss." *In re Curran*, 855 F.3d 19, 25 (1st Cir. 2017), quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010).

In reviewing a motion to dismiss, the court confines itself to the Complaint (here the SAC) – only accepting extraneous documents that are

central to the court's review and the authenticity of which is irrefragable (e.g., public records and documents such as the signed contract which is the basis of the SAC). *See Hogan v. E. Enters./Bos. Gas,* 165 F. Supp. 2d 55, 58 (D. Mass. 2001). This means that the court cannot consider issues McIntosh has raised in other extraneous pleadings, including his Opposition, original Complaint, or FAC, or their attached noncompliant exhibits.

### Rule 8(a)(2)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must also comply with Rule 8(a)(2) of the federal rules, which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." S*ee Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), citing Fed. R. Civ. P. 8(a)(2). The "fundamental purpose" of this pleading rule "is to protect a defendant's inalienable right to know in advance the nature of the cause of action being asserted against him." *Martinez v. Petrenko*, 792 F.3d 173, 179 (1st Cir. 2015) (quoting *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008)). The requirement of a "short and plain" statement of a claim "proscribes the obfuscation of the plaintiff's claims." *Kensu v. Corizon, Inc.*, 5 F.4th 646, 651 (6th Cir. 2021).

**Statute of Limitations**

Under the discovery rule, a claim accrues when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, a factual basis for a cause of action. The First Circuit Court of Appeals instructs a trial court that

> [w]hen the allegations in a complaint show that the passage of time between the events giving rise to the claim and the commencement of the action exceeds the applicable limitations period, a [ ] court should grant a 12(b)(6) motion by the defense if the complaint (and any other properly considered documents) fails to sketch a factual predicate that would provide a basis for tolling the statute of limitations.

*Abdallah v. Bain Capital LLC*, 752 F.3d 114, 119 (1st Cir. 2014) (internal quotations omitted). The statute of limitations may, on the other hand, be tolled when (1) the facts giving rise to a cause of action are "inherently unknowable" to the injured party, or (2) when a cause of action is fraudulently concealed by the wrongdoer. *Gonzalez v. United States*, 284 F.3d 281, 288-289 (1st Cir. 2002). The burden rests with the plaintiff to demonstrate that his claim is not time barred. *Ouelette v. Beaupre*, 977 F.3d 127, 135 (1st Cir. 2020) ("Once [a] defendant establishe[s a] defense of statute of limitations the burden shifts to plaintiff to establish that the statute of limitations does not apply."); *Zamboni v. Aladan Corp,* 304 F. Supp. 2d 218, 223 (D. Mass. 2004) ("Under Massachusetts law, when a defendant

raises the statute of limitations, the burden rests on the plaintiff to demonstrate that his claim is not time barred; the plaintiffs must establish the facts that take their case outside the impact of the statute of limitations.").

In his Opposition, McIntosh asserts that the "[s]tatute of limitations should be enlarged or suspended" because "the MBTA and its agents falsified MBTA documents about the plaintiff . . . and perpetrated *some kind of fraud. . . . The fraud concealed material facts from [McIntosh]."* Opp'n Dkt #19 ¶¶ 6-7 (emphasis added).

## Rule 9(b)

Pursuant to Fed. R. Civ. P. 9, when alleging fraud, "a party must state with particularity the circumstances constituting fraud," informing the reader of who did what and when it was done. McIntosh fails to specify the content of the false statements (or the fraudulently concealed information), identify who made the false statements (or concealed the information), and when the alleged statements (or concealments) were made.

## Pro Se Status

While the court is required to review pro se pleadings indulgently, a litigant's pro se status does not excuse his failure to comply with the Federal Rules of Civil Procedure or the district court's Local Rules. *See FDIC v.*

*Anchor Props.*, 13 F.3d 27, 31 (1st Cir. 1994): *see also Thomas v. Rhode Island*, 542 F.3d 944, 949 (1st Cir. 2008) (quoting *Calvi v. Knox Cnty.*, 470 F.3d 422, 430 (1st Cir. 2006)).  The "right of self-representation is not 'a license not to comply with relevant rules of procedural and substantive law.'" *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 140 (1st Cir. 1985) (quoting *Faretta v. California*, 422 U.S. 806, 835 n.46 (1975)).

### Discrimination claims

In the SAC, McIntosh's discrimination claims are lodged against the MBTA under Title VII and Mass. Gen. Laws ch. 151B, §§ 4(4) and 4(A).  Title VII makes it unlawful for employers to:

(1)   fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2)   to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a).

"These two proscriptions, often referred to as the 'disparate treatment' (or 'intentional discrimination') provision and the 'disparate impact' provision, are the only causes of action under Title VII." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.,* 575 U.S. 768, 771-772 (2015).

McIntosh asserts a disparate treatment claim—that his employment was terminated because of his race.   To determine whether a plaintiff has successfully established a discrimination claim, federal and state courts rely on the burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See also Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 19 (1st Cir. 1999); *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 681 (2016), quoting *Blare Molding Sys. Bos., Inc.*, 419 Mass. 437, 441 (1995); *Abramian v. President & Fellows of Harvard Coll.*, 432 Mass. 107, 116 (2000).  To succeed on his claim, at the first step McIntosh must adduce a prima facie case of discrimination, showing that: (1) he is a member of a protected class; (2) he was performing at an adequate level; and (3) he suffered an adverse employment action, and (4) there is some evidence of a causal link between his protected status and the adverse employment action. *See Bhatti v. Trs. of Bos. Univ.*, 659 F.3d 64, 70 (1st Cir. 2011).  *See also Muldrow v. City of St. Louis, Missouri*, 601 U.S. ___ (April 17, 2024) (holding that an employee bringing a claim for discrimination under Title VII need only show some adverse employment disadvantage as part of his prima facie case but need not show a "significant" disadvantage).  If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the employer to

articulate a legitimate, nondiscriminatory reason for the adverse employment action.[3]

While at the pleading stage, plaintiff is not required to plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss, *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013), the elements of a prima facie case, however, are not irrelevant to a plausibility analysis in a disparate treatment case. *Id.*, 711 F.3d at 54.

Turning to the specific allegations in the SAC, there is no dispute that McIntosh received a termination letter (an employment disadvantage). *See* MBTA Mem. at 5. And while the SAC makes no mention of McIntosh's protected class, in his Opposition he asserts that "[p]laintiff is of a protected class, <u>race</u>." Dkt # 19 ¶ 1 (emphasis added). Defendants do not assert that McIntosh is not a member of a protected class, only that he did not plead it.

---

[3] "In assessing pretext, a court's 'focus must be on the perception of the decision maker,' that is, whether the employer believed its stated reason to be credible." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 824 (1st Cir. 1991). "The employer's reasons need not be wise, so long as they are not discriminatory, and they are not pretext. *Tardanico v. Aetna Life & Cas. Co.,* 41 Mass. App. Ct. 443, 448 (1996). If the employer clears this low hurdle, a plaintiff must come forward with evidence showing that the employer's proffered reason is a pretext and that a discriminatory animus was at the heart of the employer's actions. "Despite these shifting burdens of production, the plaintiff throughout retains the burden of persuasion." *Conward*, 171 F.3d at 19.

Similarly, it is plausible to infer that McIntosh was initially deemed by the MBTA to be qualified for a trainee position.

However, none of the allegations of the SAC support claims of discrimination. He fails to include any facts which indicate that he was treated less favorably than other similarly situated employees or that any of the comments or acts he describes were motivated by animus directed at him personally because of his race.

### Hostile Work Environment

McIntosh also labels some of the events listed in the SAC as "harassment." To establish a prima facie case for a hostile work environment claim under Title VII, an employee must plead: (1) that he is a member of a protected class; (2) that he was subjected to racial harassment; (3) that the harassment was based upon race; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive work environment; (5) that racially objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established. *See Douglas v. J.C. Penney Co.,* 474 F.3d 10 (1st Cir. 2007). "In addition, the plaintiff

must show that the employer is liable either for creating or for tolerating that atmosphere." *Wilson v. Moulison N. Corp.,* 639 F.3d 1, 7 (1st Cir. 2011).

To the extent that MBTA personnel were hostile to McIntosh (and defendants dispute whether they were), the examples cited by McIntosh appear to be "petty slights," "simple lack of good manners" or at worst odd or idiosyncratic behavior.   *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Noviello v. City of Boston,* 398 F.3d 76, 92 (1st Cir. 2005).  However, there are no allegations in the SAC to support a conclusion that McIntosh's unpleasant experience while a trainee at the MBTA was a result of a racially motivated hostile or abusive work environment created or condoned by MBTA management.

**Retaliation**

McIntosh also references retaliation in his SAC.  A claim for retaliation requires McIntosh to aver that "[he] undertook protected conduct," defendants "took a material adverse action against [him]," and "a causal nexus exists between elements one and two." *Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 139 (1st Cir. 2013); *see also Mole v. Univ. of Massachusetts*, 442 Mass. 582, 591-592 (2004).  "An employee has engaged in activity protected by Title VII if [he] has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified,

assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Fantini v. Salem State Coll.*, 557 F.3d 22, 32 (1st Cir. 2009) (quoting 42 U.S.C. § 2000e-3(a)). *See also Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996).

There are no allegations of protected conduct or opposition to unlawful practices.  In sum, McIntosh fails to "point to *some* evidence of retaliation by a pertinent decisionmaker."[4]  *Randlett v. Shalala*, 118 F.3d 857, 862 (1st Cir. 1997).  His claim of retaliation necessarily fails.

Defendants also argue that the statute of limitations has run on McIntosh's Chapter 151B claim.  A civil action brought pursuant to Chapter 151B must be filed "not later than three years after the alleged unlawful practice occurred." Mass. Gen. Laws ch. 151B, § 9. "An employment discrimination claim accrues when the employee has unequivocal notice of some harm resulting from an allegedly discriminatory act." *McAleer v. Prudential Ins. Co. of Am.*, 928 F. Supp. 2d 280, 284 (D. Mass. 2013) (citations omitted).  To prevail on a statute of limitations defense at the motion to dismiss stage, the facts establishing the defense must: (1) be

---

[4] For his federal claim, McIntosh must show retaliatory animus at the third step, but for his state claims, he need not offer evidence of animus.  *See Calero-Cerezo v. U.S. Dep't of Just.*, 355 F.3d 6, 26 (1st Cir. 2004); *Blare v. Husky Injection Molding Sys. Bos., Inc.*, 419 Mass. 437, 441 (1995).

definitively ascertainable from the complaint and other allowable sources of information; and (2) suffice to establish the affirmative defense with certitude. *Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 324 (1st Cir. 2008) (quotation marks and citation omitted).

McIntosh acknowledges that he received his termination letter on February 27, 2020 ("the ultimate adverse employment action in retaliation for protected activity.").[5]  SAC ¶ 13.  However, he failed to commence this action until January 12, 2024, nearly a year after the three-year statute of limitations for his Chapter 151B claims had run.  McIntosh fails to meet his burden to toll the statute of limitations and his Chapter 151B also will be dismissed.

## ORDER

For the foregoing reasons, the MBTA's renewed motion to dismiss the SAC is <u>ALLOWED</u>.  The Clerk can enter an Order of Dismissal and close the case.

---

[5] In support of his argument to toll the statute of limitations, McIntosh makes a general assertion (in his Opposition) that the MBTA and its agents "falsified documents about [him]" and "perpetrated some kind of fraud" which "concealed material facts" of "reckless, willful and outrageous . . . criminal conduct", which he claims precludes the MBTA from "invoking the statute of limitations." Dkt #19 ¶¶ 6-9.  However, he never explains how this "fraud" or falsified documents impacts the fact that he received his termination letter (notice) in February of 2020.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE